Next we have N Re Hero Nutritionals. Michael Chekian appearing for Appellant. Todd Ringstadt appearing for Appalee. Hey come on up Mr. Chekian. Would you like to reserve some time for rebuttal? If possible I'm not sure if I can get through everything but I'll watch the clock. Do you have a target for what you want to reserve? Three minutes. Okay all right go ahead please. Thank you and good morning. I'm Michael Chekian on behalf of the Appellant and creditor in the Hero Nutritionals case, Jennifer Hodges. The issue, the primary issue today is over the timeliness of the amended claim 41. Just wanted to briefly point out that the issue of claim timeliness is subject to de novo review. It's jurisdictional per In Re Wilkins 587 BR 97 at page 100. That's a Ninth Circuit case. To start, I'm sorry to interrupt but I think you conceded pretty quickly that the claim was untimely. Correct. Right so really we're talking about excusable neglect and informal proof of with one more twist I want to point out so hopefully you have something to you won't fall asleep during this argument. We're pretty good at staying awake. So here we have the original claim filed on August 15, 2023 which should be considered timely not only because of the claims bar date being listed as that same date August 15, 2023. When you say listed you're referring to the header on the ECF docket sheet? Correct. But not by the orders in the case? Correct but wait there's more. But there's a different. I want to say you think it's reasonable to rely on the CME CF header rather than the orders? Well yes and no. I mean I've admitted on the record that in a perfect world I would have filed it by that June 2023 date but I guess I got fooled by looking at those looking at those headers on the claims docket in the main docket and readjusted my deadlines to my you know to my. I thought that the second deadline was also for administrative expenses in the chapter 11 prior to conversion for administrative expenses. The administrative claims deadline was also in the order August 15, 2023 the same day that the original date the claim was filed. But this was an administrative expense? Maybe and here's why. The amended claim was incurred or arose just after the HERO chapter 11 petition date which was August 17, 2022. The Hodges claim was incurred two days later on August 19, 2022 when the trustee in her personal case, Ms. Hodges personal case, sold some real estate in San Miguel, California personally owned by Ms. Hodges. I think Mr. Ringstadt is probably going to say there was a claim before that. It wasn't that the amount wasn't determined until this property was actually sold but the liability existed before that date. What do you say to that? That's true but what happened as a result of this sale is that the secured creditor McCormick which had a blanket lien on not only some of Ms. Hodges personal property in her personal bankruptcy but in they had a blanket lien on all assets of HERO. Ms. Hodges was in bankruptcy? Correct. So why wouldn't this claim belong to her bankruptcy trustee? She was in seven? She was in seven. So what claim does she have? Did she claim it as exempt in her bankruptcy? This would have been a claim if there was a claim it wouldn't have been hers to make it would have been an asset of her bankruptcy estate and her chapter seven trustee should have made it. Correct. Her chapter seven trustee stood in her shoes and sold the property. But the trustee did not then make a claim in this bankruptcy proceeding. See she wouldn't have had the claim. He did. Mark Scharf did file a claim in the HERO bankruptcy. Including for the matters you're talking about here? No. Okay. Because it paid down the McCormick secured lien and McCormick freed up more equity for the estate in the HERO case as a result of it's reducing its claim. But the claim that Ms. Hodge filed or that was filed on her behalf on the August 15th you know the the administrative claims deadline isn't that a claim that wasn't I don't see how was her claim. The house that was sold was property of that bankruptcy estate right? And she didn't exempt it and the trustee didn't abandon it. It would have been the trustee in her bankruptcy estate that would have had a claim. Isn't that right? Right. But the trustee is the same as Ms. Hodges right? No. Not in a chapter seven. No. Go ahead. Well as a result of the settlement agreement and the money that was received through escrow on August 19 after the HERO bankruptcy was filed a benefit was conferred dollar for dollar to the bankruptcy estate of HERO as a result. But it went to the wrong party which is the of your claim right? There was an agreement that it was to be there was a settlement agreement that said that the 50 percent of the portion and this is in the excerpts of record 50 percent of the net proceeds from the sale of the San Miguel property was to pay down the McCormick claim. We understand that. Right. Yeah. Okay. Yes. But the question was whose claim it was. I want to switch you a little bit on something else is that in the briefing and in Judge Clarkson's order talks a lot about you know you one of your arguments is the excusable neglect that there was excusable neglect. Is that the right standard here or do we look to bankruptcy rule 3002c? Don't have that one memorized. The Ninth Circuit has ruled at times that the timing of filing of claims in a Chapter 7 is governed exclusively by rule 3002c. Makes you feel better Mr. Checkian. Mr. Ringstadt also got up and grabbed his book so. Are you talking about the Chapter 11 right now? The notice? Well, I'm not sure that you're going to have time in your 15 minutes here to go through this and read the cases but I would bring your attention to the In Re Edelman case at Dicker v. Dye 237 bankruptcy reporter 146. That's a Ninth Circuit BAP case out of 1999. Maybe we should move on to another topic rather than have you spend your time on on this point. Okay. So we've thrown you off but please pick up wherever you wish to take off. Okay. So the administrative claim order is vague and it contributes to my client and my understanding that the deadline of, well, let me just read. It's excerpts of record number 11, number 272, the first full paragraph. Please take notice that the bankruptcy court has set a deadline of August 15, 2023 for Chapter 11 administrative creditors, specifically creditors whose debts were incurred after the filing of Hero Nutritional's Chapter 11 petition on August 17, 2022 and before the date of conversion at March 6 of the next year. So Section 503 B1A defines administrative claims broadly as those actual and necessary costs and expenses of preserving the estate. But this wasn't preserving the Hero estate. Preserving the Hero estate. But this was paid through the Hodge estate. That's the point. But that's why the the amount of a claim is the amount of the proceeds that paid down McCormick. That's a payment of a claim and apparently it was a payment of Ms. Hodge's claim that had an ancillary benefit under the settlement agreement, correct? Right. So why does that get to be a administrative expense and was that what Judge Clarkson decided? He didn't look at this issue. Then isn't it waived? Well, not if it's part of the record. All of this was part of the record of of before the this claim was decided, even though it wasn't brought up. And so if it's an allowed administrative priority claim, it can stand alone as a timely claim. We don't even have to look at the relation back back doctrine or whether or not there's an informal proof of claim because of the effect of section 72726A1, which basically says that it doesn't matter if you have an administrative claim that is late filed. It's still considered as a timely claim. It's paid on par with all the other classes of administrative claims, unlike the effect of 7276A2 and A3 for general unsecured claims, which allows for subordination if you don't file on time. Did you raise that argument to Judge Clarkson or in your brief? No, but I'm requesting remand to consider that issue. Well, did you raise the issue, though, as one of your arguments as to why the case should be remanded? I mean, was it raised? Did you raise it in your brief? No. But I think the trustee has a fiduciary responsibility to treat all creditors on equal footing. And if there's grounds to allow a claim based on the record, then it should consider withdrawing its objection. I'll just point out you have about three minutes left. It's up to you what you want to do. I'm going to continue on. And so there's grounds that this should not be subordinated. But even if it's not allowed as an administrative claim, I think as a general unsecured claim, the amended Claim 41 should relate back because there's no prejudice to any party in doing so. No party... Is there a prejudice? If this is a claim that belongs to the Hodges bankruptcy estate, I don't know whether all of her creditors were paid in full in that bankruptcy estate, but if it belongs to the trustee in that estate as opposed to her, it's not going to her. It would go to her creditors, right? We're talking about the... This isn't her bankruptcy we're talking about. It's Hero's bankruptcy. Right, except for, again, getting back to who owns this claim. We're wondering about her standing, which affects our appellate jurisdiction. Is she an appropriate person to assert this claim, or instead should it be her Chapter 7 trustee? Well, if the claim gets allowed, then she will receive some portion of her claim. Will she or not? I don't know what happened in her... We don't have in the record what would go to her creditors in her bankruptcy. Were her creditors paid in full? Did she claim any of this as an exempt asset in her bankruptcy estate? Her creditors were paid in full. In fact, she got a... It was a solvent estate in her personal estate. And so... Can I add or suggest... I'd be interested in hearing what you have to say on informal proof of claim in the minutes that you have left, unless you want to reserve. Informal proof of claim is that we look at the Taylor-Sherman Declaration that's in the excerpts, where it walks... But what is the most specific evidence of a specific demand made to the estate? Trying to... In the time that you have. Specific demand... When did she say, you owe me $840,000? Oh, it's her... What we're calling her timely claim, even though it was denied by the court. So her original August 15 claim of 41, even though it was denied, it's a request for payment. Yes, it says to be determined later. It doesn't have any evidence, I understand. But it is a request for payment. And it's corroborated, the nature and extent and amount, by these other documents that I've been talking about, showing... That are in the record, showing that the amount was received by the creditor, which reduces claim in the estate of Hero. Okay. I'm afraid you've run through your... We've run you through your 15 minutes. So thank you very much. I appreciate your thoughtful questions. Thank you. Thank you. All right. Mr. Ringstead, please go ahead. All right. I'm unmuted. Good morning, Your Honors. First, I just want to thank you all for allowing me to appear via Zoom. I have a very long drive over a very hot desert coming ahead of me. I'm not looking forward to that. I have to tell you, I feel like I prepared for the wrong case. What I heard from Mr. Chekian this morning is something that has never been asserted previously. He has... And first, let me just focus on his client, Ms. Hodges. Ms. Hodges filed a voluntary Chapter 11 for the company that she owns and controls, Hero Nutritionals. She signed the schedules under penalty of perjury. She did not disclose that she had any claims or held any claims against the estate. She prepared a plan in her disclosure statement. Neither had any indication that she had any claim against the estate. Well, if I can stop you there, because I believe in her declaration, she references that she's made some reference to being something like a potential creditor or some reference to that. Does that trigger any bails? There was... And in what Mr. Chekian originally said was the informal proof of claim, there was a statement that she expected money, had some expectation of money. And if you look at my brief, what he did is he took something out of context. And if you look at the full language there, what she was clearly talking about was that she was expecting to reorganize the company and profit from it. That was the expectation, not that she had some claim against the estate. So there was in the language that Mr. Chekian quoted out of context, there is no indication that in fact, she was expecting to file a claim against the estate. After the case was converted, there was a regular bar date set, Chapter 7 bar date was set, June 22nd, I believe. Once again, she gave no indication that she had a claim or intended to assert a claim. She did not file a claim. So now we get to the administrative claims bar date of August 15th. She does not file an administrative claim. She files something that is not a claim at all. The basics of the claim are the identification of the holder of the claim, the amount of the claim, and the basis of the claim. Her name's there, but we are told that the amount of the claim is undetermined to be amended. And by that time, had the sale happened in the individual estate and the payment pursuant to that settlement agreement been made? I believe so. But I have to tell you, none of those facts are in the record. They were never briefed by Mr. Hodges, either at the bankruptcy court or before this court. So that's why I said I feel like I prepared for the wrong case here. So that's not the basis of the claim, at least that we have been told. And then the amount of the claim is written in general unsecured claim, not administrative, general unsecured claim to be amended. That's it. So that does not have even the beginnings of a prima facie claim, doesn't assert a claim at all. It's an indication that maybe they'll think of one someday. And in fact, she didn't get busy and go through her paperwork and give Mr. Shekin more information and they file a claim, an amended claim a month later. No, she didn't do anything. Mr. Shekin didn't do anything. And that claim sat in that form for seven months. Meanwhile, the trustee got busy and filed an omnibus objection to the multiple claims that Ms. Hodges had filed on the administrative claims party. Even then, she waited. She filed opposition. She didn't, again, didn't amend her claim. The trustee filed a reply to her opposition, still no amended claim. Finally, three business days before the hearing, she finally gets around to amending her claim and files the claim that is before the court today. Be advised, it is not an administrative claim. It's filed as a general unsecured claim. The amended claim now asserts a claim of $822,741.45 that she had apparently forgotten about for months. The basis of the claim is general unsecured claim. So what Mr. Hodges has talked about today, this alleged administrative claim has never been filed. And it is not the claim that is before this court, nor is it the argument he made to the bankruptcy court, nor is it the argument he made in his briefs before this court. It's a brand new argument. It's Mr. Checkian's attempt at a Hail Mary, and it should not stand. The real issue, as I see it, is that the claim that was filed on August 15th did not state a claim of any sort. It just literally will think of something. But let's just assume for a moment we didn't have this issue of the fact that was the administrative claims bar date. Let's say he filed that claim on the actual claims bar date. That would not have been a prima facie claim. There's no validity to a claim that just says, we'll think of something. And in fact, what do bar dates mean? Bar dates that are authorized by the Bankruptcy Code rules. What do bar dates mean if all you have to file is, I'll file something later? A claim that says, I'll think of something. If that's all you have to file to toll the bar date, then bar dates mean nothing and they're meaningless. And any attorney can file something on behalf of their client. The client can file something that merely says, I'll get around to filing this. I'll amend this. And in fact, this is what she said in this claim. General unsecured claim to be amended. I'll think of something. Frankly, it takes more. And remember again, we're not dealing with someone who is unrepresented. We're not dealing with someone who was inexperienced in bankruptcy. We're dealing with someone who filed a Chapter 11, signed schedules under penalty of perjury without disclosing any claim, filed a plan and disclosure statement without disclosing a claim, was well represented by counsel throughout that entire period of time. And then when the case got converted and she received notice of a Chapter 7 bar date, another bar date, still failed to file a claim. So at some point, you've used up all your apples. And here, Ms. Hodges has used up three apples. Okay. So what we're dealing with here is, if anything, if this amended claim is to be deemed a valid claim, it must relate back to a prior claim that had the basis of a claim, but it didn't. There's nothing for the amended claim to relate back to because all we have is this August 15th filing that says, I'll think of something. That's not enough. Under other circumstances with a different claimant and without all those opportunities to file a claim, it would be easy to generate some sympathy for an unrepresented, an inexperienced claimant. But in this circumstance, someone who was well represented by counsel, both in the Chapter 11 and since, someone who had multiple opportunities, indeed, the obligation to disclose a claim if she had one. She had the obligation in the schedule she filed. She had an obligation to disclose that in her own personal schedules, in her personal case. This is someone who had the obligation to disclose this and did not. Hard to be sympathetic in that circumstance. So for those reasons, Your Honor, I believe that the court's well-reasoned and thorough opinion should be upheld. I think this claim should be, this appeal should be disallowed, denied, and Judge Clarkson's thoughtful ruling should be upheld. Thank you. I'd like to reserve the rest of my time for rebuttal. Well, you're the appellee, so there's no further rebuttal. Any more questions for the panel? Okay. All right. Very good. The matter's submitted. You'll get our written decision promptly. So thank you. Thank you very much.
judges: Faris, Spraker, and Corbit